**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLORADO**

**THOMAS THOMPSON,** Plaintiff, Case No. _________

v. Div.

**CITY OF DACONO, COLORADO.**

**OFFICER TYLER BISHOP,** in his individual capacity.

**OFFICER KENNETH NIX,** in his individual capacity.

**SERGEANT DANIEL FERRIS,** in his individual capacity.

**FORMER CHIEF MICHAEL SKAGGS,** in his individual capacity,

**OFFICER LEAH PARKER,** in her individual capacity, and

**JOHN/JANE DOE OFFICERS 1-4,** in their individual capacities, Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Thomas Thompson, by and through his attorney, Anthony Camera, hereby submits this Complaint and Jury Demand against the above-named Defendants, and alleges as follows:

## I. INTRODUCTION

1. This is a civil rights action arising from a retaliatory, warrantless arrest executed eight days after an innocuous encounter between a private citizen and law enforcement. On July 4, 2025, Plaintiff Thomas Thompson, a former law enforcement officer, lawfully approached the scene during a neighborhood fireworks investigation, briefly displayed a badge from his former law enforcement agency, and made constitutionally protected statements questioning the officers' management of the scene.

2. Instead of conducting a minimal investigation or asking a single clarifying question regarding Plaintiff's intent, Defendant Officer Bishop escalated the encounter. Eight days later, in an egregious display of "contempt of cop" retaliation, Dacono police officers held a pre-planned meeting at the police department to engineer a scheme to bypass the Fourth Amendment's warrant requirement. They lured Mr. Thompson from his home under false knock and talk pretenses and

executed a warrantless arrest for "Impersonating a Peace Officer" and “Attempting to Influence a Public Servant.”

3. As a direct, foreseeable result of Defendants' unconstitutional actions, Mr. Thompson was jailed, denied necessary medical care, maliciously prosecuted, stripped of his livelihood in the forensic data recovery field, and subjected to severe emotional distress. An ensuing Internal Affairs investigation sustained multiple policy violations against the involved officers, resulting in the resignation of a Sergeant and a reprimand for Officer Bishop.

## II. JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

5. Supplemental jurisdiction over Plaintiff’s state law claims is founded upon 28 U.S.C. § 1367. Plaintiff also brings claims for the deprivation of his constitutional rights under the Colorado Enhance Law Enforcement Integrity Act, C.R.S. § 13-21-131. Plaintiff has timely complied with the notice requirements of the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-109, having filed his notice on December 15, 2025.

6. Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Weld County, Colorado.

## III. PARTIES

7. **Plaintiff Thomas Thompson** is a resident of Dacono, Weld County, Colorado.

8. **Defendant City of Dacono, Colorado** is a municipal corporation organized under the laws of Colorado, which operates and oversees the Dacono Police Department.

9. **Defendant Officer Tyler Bishop** was, at all relevant times, a police officer employed by the City of Dacono. He is sued in his individual capacity.

10. **Defendant Officer Kenneth Nix** was, at all relevant times, a police officer employed by the City of Dacono. He is sued in his individual capacity.

11. **Defendant Sgt. Daniel Ferris** was, at all relevant times, a sergeant employed by the City of Dacono. He is sued in his individual capacity.

12. **Defendant Former Chief Michael Skaggs** was, at all relevant times, the Chief of Police employed by the City of Dacono. He is sued in his individual capacity.

12. a. **Defendant Leah Parker** was, at all relevant times, a police officer employed by the City of Dacono. She is sued in her individual capacity.

12. b. **Defendants John/Jane Does 1-4** were, at all relevant times, police officers, sergeants, or supervisors employed by the City of Dacono who participated in the unlawful arrest, detention, and prosecution of Plaintiff. They are sued in their individual capacities.

## IV. FACTUAL ALLEGATIONS

A. July 4, 2025, Encounter.

13. On the evening of July 4, 2025, Dacono Police Department officers, including Defendant Officer Bishop, were patrolling Plaintiff's neighborhood investigating illegal fireworks.

14. At approximately 10:00 p.m., officers made contact with neighbors four houses down from Plaintiff's residence.

15. Plaintiff approached the scene and began speaking with several neighbors, whom he had met for the first time that evening. After a few minutes, Defendant Officer Bishop approached the group and explained his intended course of action. During this interaction, Plaintiff briefly displayed his former law enforcement badge for approximately one second before immediately returning it to his pocket.

16. Officer Bishop stated that he had requested a sergeant respond to determine their course of action. Plaintiff responded, "Dude, it's fireworks. You don't need a sergeant for fireworks," expressing his opinion, based on his prior law enforcement experience, that a sergeant was not necessary to decide whether to issue citations. At no point did Plaintiff explicitly ask Defendant Bishop to terminate the investigation, decline to issue citations, give anyone a warning, or take any other particular official action.

17. Defendant Bishop replied that he was attempting to avoid issuing tickets. Plaintiff responded, "I don't want to escalate," and began walking away from the encounter.

18. As Plaintiff was leaving, Officer Bishop asked, "Who do you work for?" Plaintiff replied, "Louisville." Because the encounter occurred at night amid loud fireworks and a chaotic environment, it is unclear whether Officer Bishop heard Plaintiff refer to his former employment in Louisville in the past tense or mistakenly interpreted the statement as indicating current employment. Plaintiff's statements were, at most, mere bravado, puffery, or bragging, which is protected expression.

19. Defendant Bishop reacted by saying "Okay don't flash your badge, don't flash your badge" Thompson responds "Okay, you don't have to talk down to me either."

20. During the ensuing two-minute conversation, Plaintiff Thompson and Defendant Bishop exchanged a few more back and forth statements. During this exchange, Defendant Bishop introduced the concept of "hierarchy," which Plaintiff immediately denied attempting to invoke, reiterating his desire not to escalate the situation.

21. Sergeant Ferris and Officer Nix subsequently joined the conversation. The other officer recognized Plaintiff from their mutual prior service at the Longmont Police Department. Plaintiff conversed with the officers for several minutes, explaining his termination, before peaceably returning home.

22. At no point during this encounter did Plaintiff assert active police authority, issue commands, or falsely pretend to be an active peace officer. No witness on the scene identified any police action taken by Plaintiff, nor did anyone hear him explicitly ask the officers to alter their duties.

B. The Delayed, Warrantless Arrest and Premeditated Ruse.

23. Following the July 4 incident, Defendants had eight days to conduct a follow-up investigation, clarify Plaintiff's intent, or present an affidavit to a neutral magistrate to seek an arrest warrant. They did none of these things.

24. Instead, on July 12, 2025, Defendants Bishop, Nix, Ferris and Parker held a meeting at the Dacono Police Department to plan Plaintiff's arrest. Knowing they lacked a warrant, the officers conspired to utilize Officer Parker (an officer Plaintiff had never met) to execute a "knock and talk" ruse. The plan was simple: Officer Parker would knock on Plaintiff’s door claiming she simply wanted to talk with Plaintiff, in order to lure Plaintiff out of the constitutionally protected curtilage of his home. The officers explicitly understood that if Plaintiff did not exit the residence, they would need to obtain a warrant.

25. On the evening of July 12, 2025, Officer Parker knocked on Plaintiff’s door. Employing the ruse, she asked Plaintiff's wife to speak with her husband regarding a Fourth of July complaint. Officer Parker specifically requested that Plaintiff "step out here and talk with me." When Plaintiff stepped down to the final set of his porch (Plaintiff maintains this area remained within the constitutionally protected curtilage of his home) three officers suddenly swarmed him and placed him in handcuffs without a warrant, exigent circumstances, or fresh pursuit, in direct violation of *Payton v. New York* and local 19th Judicial District protocols requiring immediate probable cause and exigent circumstances for warrantless arrests at home. Plaintiff had not voluntarily left the home's threshold except in response to the officers' deliberate induction intended solely to carry out their already-decided warrantless arrest.

26. Plaintiff was arrested for Impersonating a Peace Officer (C.R.S. § 18-8-112) and Attempting to Influence a Public Servant (C.R.S. § 18-8-306).

27. During his transport and booking, Plaintiff informed officers that he required prescribed medication. Defendants demonstrated deliberate indifference by failing to provide this medication during his 18 hours of incarceration. Furthermore, Plaintiff complained that he could not feel his right hand due to the handcuffs, but Officer Nix ignored the complaint and waited approximately seven minutes until arriving at the jail to adjust them.

28. Plaintiff's 8-year-old son (at the time of incident) was present and traumatized as Plaintiff was lured from their home and arrested.

C. Fabrication of Evidence and Malicious Prosecution.

29. To justify the unlawful arrest, Defendant Bishop drafted an incident report that omitted exculpatory evidence and contained false statements, including speculative and unsupported claims that Plaintiff's lawfully possessed badge might be stolen.

30. Defendant Bishop also intentionally paraphrased statements that were taken out of context and not the whole conversations. By paraphrasing only certain statements or words he attempted to justify that he felt Plaintiff Thompson was attempting to influence him. Plaintiff Thompson's exculpatory statements were likewise never included in any reports nor in the Probable Cause Affidavit:

> a. In the probable cause affidavit supporting Plaintiff's arrest, Defendant Bishop intentionally exaggerated Plaintiff's statements to manufacture a felony charge. While body-worn camera footage clearly shows Plaintiff answering "Louisville" to a question about his employment, Defendant Bishop's affidavit falsely characterized Plaintiff as stating he worked for the "Louisville Police Department," "claiming" to be an officer, and ultimately concluding Plaintiff was "stating he was an Officer." This fabricated escalation was central to the felony impersonation theory. 30.
>
> b. Furthermore, regarding the Attempt to Influence charge, Defendant Bishop's original report admitted that he merely "interpreted" Plaintiff's constitutionally protected statements (e.g., that fireworks were "just fireworks") as an attempt to change his mind. The probable cause theory relied entirely on Defendant Bishop's subjective interpretation of ambiguous speech rather than any express request by Plaintiff for specific official action. Defendant Bishop deliberately mischaracterized what was, at most, mere bravado, puffery, or bragging into a fabricated felony charge.

31. Defendants acted with retaliatory intent and malice toward Plaintiff. After the July 4, 2025 encounter concluded and the individuals at the scene dispersed without any citations being issued, Defendant Bishop expressed anger toward Plaintiff on body-worn camera, stating, "That pissed me off." Later, during a meeting preceding Plaintiff's arrest, Defendant Bishop stated, "I really want to get that guy."

32. In the probable cause affidavit supporting Plaintiff's arrest, Defendant Bishop further alleged, without any supporting evidence, that Plaintiff may have stolen the badge he possessed. Plaintiff alleges this accusation was knowingly unsupported and was included to improperly justify the arrest and portray Plaintiff in a negative light.

33. Additionally, during the Internal Affairs interview, Defendant Bishop made false and unsupported statements about Plaintiff's prior employment with the Longmont Police Department.

Those statements, which were later incorporated into an official government document, falsely characterized Plaintiff as a stalker, suggested that Plaintiff pursued legal action solely for financial gain, and claimed that Plaintiff had already sued the City of Longmont. Plaintiff alleges these statements were false, irrelevant to the July 4, 2025 incident, and intended to damage Plaintiff's reputation and improperly influence the investigation and subsequent proceedings.

34. In fact, upon Plaintiff's resignation from the Longmont Police Department, Plaintiff entered into a "Resignation, Release and Settlement Agreement" with the City of Longmont. That agreement provided that only designated individuals - including the Public Safety Chief, Deputy Chief of Police, Chief Human Resources Officer, and Assistant Director of Human Resources - were authorized to respond to inquiries regarding Plaintiff's employment. The agreement further included Plaintiff's express release of claims against the City of Longmont.

35. The charges against Plaintiff were dismissed in his favor on October 22, 2025, and the criminal record was subsequently sealed on November 18, 2025.

36. In correspondence with Defendant Bishop, the District Attorney explained the basis for dismissing the charges, stating: "I did decide to dismiss the case as I didn't see it as aggravated, understood it was a dumb thing to flash the badge, but in the end I was probably going to go as low as an M2 or a petty offense for a plea, and not a felony based on criminal history and the facts of the case."

37. Plaintiff alleges that, during the discussion with the District Attorney regarding a potential resolution, the District Attorney proposed a petty offense disposition. Plaintiff declined that offer because he believed the elements of the charged offenses were not supported by the facts. The District Attorney's later statement that the dismissal was based on "the facts of the case" further confirmed that the decision was grounded in the circumstances of the incident rather than any admission of wrongdoing by Plaintiff.

38. During the third week of January 2026, Plaintiff was advised by his defense attorney, Jason Javonovich, that Deputy District Attorney Funk had contacted him to clarify certain information regarding the case. Attorney Javonovich further advised Plaintiff that Dacono Police Chief Michael Skaggs had contacted the District Attorney's Office to question the District Attorney's decision regarding the matter. According to Attorney Javonovich, Deputy District Attorney Funk stated that the case had been reviewed by both the District Attorney and multiple Deputy District Attorneys. Following that review, they unanimously concluded that the matter had been handled appropriately and affirmed their original decision, declining to make any changes to their determination.

D. Internal Affairs Findings and Municipal Liability (*Monell*).

39. On May 25, 2026, an independent Internal Affairs investigation commissioned by the Police Advisory Board was completed. While the Board did not sustain Plaintiff's original complaint allegations as framed, it unanimously sustained separate policy violations against the officers. Specifically, the Board found policy violations concerning Defendant Bishop’s "Initial

Investigation and Report Preparation," as well as Defendant Ferris's "Report Preparation and Report Review and Corrections.".

40. As a result of these findings, Sergeant Ferris resigned in lieu of termination, and Officer Bishop received a reprimand. Chief Skaggs retired from the department shortly after the incident and subsequent performance reviews.

41. The constitutional violations suffered by Plaintiff were the direct result of the City of Dacono's policies, customs, and failures to train and supervise its officers. Prior to July 4, 2025, the City of Dacono and its supervisory officials were aware of documented deficiencies in Defendant Bishop's performance yet prematurely released him to solo patrol without adequate corrective intervention.

E. Damages.

42. As a direct and proximate result of Defendants' actions, Plaintiff suffered substantial economic, professional, medical, and emotional harm.

43. Plaintiff lost his primary source of income as a private investigator and was forced to close his forensic digital data recovery business, "Smoking Gun Forensics," due to the irreparable reputational damage caused by public association with felony charges.

44. Plaintiff has been diagnosed with PTSD, depression, and anxiety.

## V. CAUSES OF ACTION

CLAIM I: 42 U.S.C. § 1983 – Unreasonable Seizure / False Arrest
*(Against Individual Defendants)*

45. Plaintiff incorporates all preceding paragraphs.

46. Defendants seized and arrested Plaintiff without a warrant and without probable cause in violation of the Fourth Amendment. In accordance with *Payton v. New York*, Defendants unlawfully bypassed the warrant requirement by engineering a "knock and talk" ruse to lure Plaintiff from his home without exigent circumstances or fresh pursuit.

CLAIM II: 42 U.S.C. § 1983 – Excessive Force
*(Against Arresting Officers / Doe Defendants)*

47. Plaintiff incorporates all preceding paragraphs.

48. The force used to effectuate the arrest of Plaintiff—specifically swarming him and ignoring his complaints regarding excessively tight handcuffs causing loss of feeling when he was unarmed, non-violent, and complying—was objectively unreasonable and excessive under the Fourth Amendment.

CLAIM III: 42 U.S.C. § 1983 – Malicious Prosecution
*(Against Individual Defendants)*

49. Plaintiff incorporates all preceding paragraphs.

50. Defendants initiated and continued a criminal prosecution against Plaintiff without probable cause. Defendants acted with malice, as evidenced by Officer Bishop's recorded statements ("I really want to get that guy"), Chief Skaggs's improper, out-of-channel attempts to pressure the District Attorney into reversing the decision to dismiss the charges, and reckless disregard for Plaintiff's rights by relying on fabricated reports and deliberately ignoring exculpatory evidence. The prosecution terminated in Plaintiff's favor.

CLAIM IV: 42 U.S.C. § 1983 – Equal Protection ("Class of One")
*(Against Individual Defendants)*

51. Plaintiff incorporates all preceding paragraphs.

52. Defendants intentionally treated Plaintiff differently from similarly situated individuals without a legitimate governmental basis. During the July 4, 2025 incident, another neighbor who was present at the scene identified himself as working for "Jeffco Police" and "Jeffco Sheriff." Despite that individual's assertion of a law enforcement affiliation, Defendants did not verify his employment status, subject him to the same scrutiny, or take similar action against him.

53. Plaintiff alleges that, unlike the other bystander, the presence of Plaintiff's lawfully possessed former law enforcement badge caused Defendants to single him out for heightened scrutiny and adverse treatment. The disparate treatment was motivated by hostility toward Plaintiff and his protected expression, rather than any legitimate law enforcement purpose, in violation of Plaintiff's rights under the Fourteenth Amendment.

CLAIM V: 42 U.S.C. § 1983 – Municipal Liability (*Monell*)
*(Against Defendant City of Dacono)*

54. Plaintiff incorporates all preceding paragraphs.

55. The City of Dacono failed to properly train, supervise, and retain Defendant Bishop despite documented FTO concerns regarding his history of overreaction. This systemic failure is further evidenced by the subsequent sustained Internal Affairs violations and the resignation of

supervisory personnel. This failure amounted to deliberate indifference to the rights of people with whom the police come into contact and directly caused Plaintiff's injuries.

CLAIM VI: State Law False Imprisonment
*(Against Individual Defendants)*

56. Plaintiff incorporates all preceding paragraphs.

57. Defendants intentionally restricted Plaintiff's freedom of movement without legal justification or probable cause.

CLAIM VII: 42 U.S.C. § 1983 – First Amendment Retaliation

*(Against Individual Defendants)*

62. Plaintiff incorporates all preceding paragraphs.

63. Plaintiff engaged in constitutionally protected speech when he openly criticized and questioned Defendant Bishop's management of the fireworks investigation. Plaintiff's statements amounted to constitutionally protected opinion, bravado, or puffery, and did not constitute a demand for specific official action.

64. Defendant Bishop and the other involved officers took adverse action against Plaintiff by executing a premeditated, retaliatory, and warrantless arrest eight days after the encounter.

65. Plaintiff's constitutionally protected speech was a substantial or motivating factor in the officers' decision to arrest him and pursue felony charges, as evidenced by the lack of an immediate arrest, Defendant Bishop's explicitly stated anger over the verbal interaction ("That pissed me off"), and the reliance on bad-faith interpretations of Plaintiff's speech in the probable cause affidavit. The retaliatory arrest, subsequent jailing, and pursuit of felony charges would chill a person of ordinary firmness from continuing to engage in protected speech.

CLAIM VIII: C.R.S. § 13-21-131 – Deprivation of Civil Rights

*(Against Individual Defendants)*

66. Plaintiff incorporates all preceding paragraphs.

67. Defendants, acting under color of state law, deprived Plaintiff of his individual rights secured by the Bill of Rights of the Colorado Constitution, including his right to be free from unreasonable searches and seizures and his right to free speech.

68. Pursuant to C.R.S. § 13-21-131, Defendants are not entitled to qualified immunity because they did not have an objectively reasonable, good faith belief that their conduct was lawful at the time it was committed.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Thomas Thompson respectfully requests that this Court enter judgment against Defendants and award the following relief:

A. Compensatory damages for economic losses, medical expenses, and emotional distress in an amount to be determined at trial;

B. Punitive damages against the individual Defendants to deter future misconduct;

C. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

D. Pre-judgment and post-judgment interest; and

E. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 13th day of August, 2026.

*/s/ Anthony Camera, Esq.*
Camera Law P.C.
1560 Broadway Ste. 1708
Denver, CO 80202
(720) 537-2519
anthony@cameralaw.org
*Attorney for Plaintiff Thomas Thompson*